May it please the court, counsel. Elizabeth Pollack on behalf of the defendant appellant Maurice Collins in this matter. On May 4th of this year, Mr. Collins, who was undisputedly a criminal history category of one, and who had never before in his adult life been to prison, was given a 10 year mandatory minimum sentence by the district court in this case. And the reason that he was given the minimum sentence is because the district court found he did not qualify for safety valve eligibility. The only factor, it's actually a very narrow case here today, that we're considering is whether or not the district court made a mistake when it found that he should qualify for the manager supervisor enhancement under the leader organizer guideline. It is our contention that that was a blatant error and that the case should be remanded to address it so that Mr. Collins can receive the benefit of the safety valve. The district court actually did everyone a really huge favor here in the transcript and actually addressed this court in his ruling saying if this goes up on appeal and they wonder if I thought this was a more than one time occasion, I will find based on his own statement with no contrary evidence from the government, it was simply on this one occasion that he directed him. And in this court's case law, it has been specifically stated that a one time transaction where you're directing a co-conspirator to do something is not sufficient to qualify for the enhancement. The language that this court has used in previous cases involving leader organizer is hierarchy, control, ongoing supervision, multiple people, multiple transactions, multiple involvements between these individuals where somebody actually has a level of control over somebody else. None of those factors are present in this case and the government has not addressed the argument that how it's possible that a one time direction of someone can qualify for this enhancement. The same language is being reiterated over and over again. Well, he told him where to get the drugs and he told him what to do with the money. Well, sure, on one occasion and that is what the district court specifically found and that is all that the evidence showed at the district court level. There is simply no further argument to be made unless the government can explain how a one time direction of somebody can qualify for a leader organizer enhancement when the case law specifically says that it does not. Ms. Pollack, what do we make of the quotation, am I meeting your cousin again? Well, first of all, Mr. Palmer, to my knowledge, is not Mr. Collins' cousin. We did object to that paragraph in the pre-sentence report, but ultimately if the government was going to put evidence on of that, it would have been nice if we could do that, but we didn't get to do that because the district court found on the face that a single transaction was sufficient. We objected to that paragraph in the pre-sentence report. We said that they were not related and that it was not Mr. Collins' vehicle that was being used on that date, but we never got to put any evidence on of that nor did the government put any evidence on of that because the district court found as an initial matter a single transaction regardless was perfectly acceptable. So we also had, there were a lot of other objections to the pre-sentence report in this case concerning obstruction and acceptance of responsibility and drug quantities, and none of those were ever addressed because the district court found, as was proper, that if you don't get past leader-organizer, there's no real reason to address the rest of these issues because you can't get below the mandatory minimum. And nothing on supervised release conditions in this case? No, Thompson and Kappas had already come out at this point. We were aware of the situation. We had adjusted the language of the supervised release conditions, and they were acceptable to all parties. So there was no issue regarding supervised release. But, you know, the only issue here is a single transaction. The court said it. The government admits it. It's not enough for leader-organizer. The case should go back. Thank you. Thank you, Ms. Pollack. Mr. Boone. Thank you, Your Honor. May it please the Court. Ms. Pollack. I think it's important to go back to what the supervisor, manager, the leader-organizer enhancement, the whole thing is designed for. It's designed to assess relative culpability between multiple participants in a criminal activity. And here the district court did not clearly err in finding that Maurice Collins was more culpable than the two individuals he recruited to participate in the drug deals. He recruited Mr. Palmer to go to Mr. Collins' stash house to get the drugs. He told Mr. Palmer where to deliver the drugs. And he told Mr. Palmer where to return with the money. He likewise recruited Ms. Galloway to distribute the crack cocaine to the CS later that year. Your Honor, I would, with respect to the what do we make of I'm meeting your cousin again, that's on the recorded call. It's in the criminal affidavit, the sworn criminal affidavit. When the CS called Collins, Collins told him where to go, and the CS' response is, so I'm meeting your cousin again. That doesn't mean that they are really cousins. That's what the CS understood the relationship to be. We're not saying that they really were cousins. But the district judge said he's basing this finding on the one incident, correct? He said he was basing it on both the November 21st, and he said there was only one between Palmer and Collins, and the April 16th. I think it's also, we need to go back to Weaver, which I believe, Judge Flom, you wrote, and that's the clearest statement on a one-time transaction between equal participants. And, again, that's the key thing here, I believe, is the equality between the drug dealers. I don't believe there is equality or there's any reasonable dispute that Collins and Palmer were equals here. It was Collins' show. He told the district court, look, I'm a one-man show. I'm an overextended drug entrepreneur, and as happens with entrepreneurs, they need underlings at some point to help them expand their business, and that's what happened here. We believe that the district court did not clearly err in finding, and that this court has said that it's the district court who's in the best position to judge the relative culpability, and here we don't believe the district judge erred. So what should we do then with the language that says, in essence, help on a one-off instance is not enough? I think, again, it goes back to one-off between equal participants, equal co-conspirators. Here it is clear that it was Mr. Collins who directed Mr. Palmer, and I think, Judge, the factors, the seven factors, although there's been some dispute as to how helpful those are in this context, but one of the factors is the nature and scope of the activity, and certainly even if it was a one-time shipment of, let's say, 100 kilos, and somebody, the drug dealer, got people to help him, told him where to take the drugs, I think that would be sufficient to say, yes, look, he's more culpable. Ultimately, that's what we're getting at here with this enhancement is the culpability, and really that's why it's relevant to the safety valve is because, again, we're assessing culpability. Is this the person, the low-level type of drug dealer that the safety valve was intended to? And because the manager-supervisor applies, the safety valve doesn't, and we believe there was no error in that assessment in this case. Thank you. Thank you. Ms. Pollack? When we're talking about the culpability assessment between two people, you still have those two people have to be involved together in order for one to be managing the other in a criminal enterprise or scheme. The only evidence that the district court heard in this case was Mr. Collins' own statement. That was his proffer statement where he described the lack of relationship that he had with Mr. Palmer, where he said, on this occasion, I was out of town. I asked him to do me a solid. He did it. That was it. There was no other evidence presented to the district court involving these two having any kind of substantial relationship whatsoever. You can't – it's the government's burden here. You can't have no evidence and then just ask to assume that, okay, well, because there was a phone call where it said, am I meeting that dude in the same place again? What if they were meeting for beer? What if they were meeting to watch a ball game? There's no evidence that there was a relationship involving drug distribution between these two people. Did Palmer have his own operation going? Yeah, he did. Okay, different corners, different neighborhoods? Different neighborhoods. As far as we know, yes, that they were just buddies who knew each other from the neighborhood, that Palmer did his thing, Collins did his thing, and that they knew each other, and this literally was a favor that he asked him to do for him on one occasion. So, you know, when we're talking about the multiple kilo distribution on one occasion, well, in a case where there's multiple kilos being transported, there's likely going to be at least a shred of other evidence as to how those people were related to each other, how that communication occurred, whether or not anything else happened previously. I would find it very difficult to believe that you could have a multiple kilo transaction where someone out of the blue calls their buddy and says, hey, can you drop off 50 keys of heroin for me? And, hey, thanks, drop the money back off when you're done. That's not a similar type of situation. This is a one-time transaction. The case law is clear. One time cannot constitute leader-organizer. This guy is safety valve eligible. What was the volume here? It was, I think, just over 28 grams of crack, just enough to trigger the mandatory minimum. Thank you. Thank you. Thank you, Mr. Powell. Thank you, Mr. Bowles. Case is taken under advisement.